IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK GODFREY | : | NO. 2:06-cv-150-ER |
| *also known as* THURMAN NELSON | : | |
| *also known as* DARRYL SANDERS, | : | |
| Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| DAVID DIGUGLIELMO, | : | |
| WARDEN of S.C.I. GRATERFORD, | : | |
| AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
| AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF PHILADELPHIA | : | |
| Respondents | : | |

REPORT AND RECOMMENDATION

CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE

Currently pending before the Court is a Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a prisoner incarcerated in the State Correctional Institution at Graterford, Pennsylvania. For the reasons which follow, it is recommended that the petition be denied.

I.   PROCEDURAL HISTORY

Following a jury trial before the Honorable James A. Lineberger of the Philadelphia Court of Common Pleas, petitioner was convicted, on April 28, 1993, of aggravated assault and theft - receiving stolen property. Judge Lineberger sentenced petitioner to an aggregate term of seven and a half to fifteen years imprisonment. As a result of a previously-imposed sentence, however, the current sentence did not commence until May 25, 1997.

Petitioner was granted parole on September 14, 2004 and was released on May 16, 2005 to a

Community Corrections Center ("CCC"). According to his parole conditions, he was to remain in the CCC until successfully discharged. On August 13, 2005, petitioner left the CCC without permission and, in turn, the Parole Board deemed petitioner delinquent as of that date. Subsequently, he was arrested by Philadelphia police, on December 16, 2005, and charged with narcotics violations, which were later dropped.

Upon lodging a detainer against petitioner, the Parole Board held a preliminary hearing for his parole violations, after which the hearing examiner found probable cause that petitioner violated his parole. A parole revocation hearing was held on March 10, 2006, but petitioner declined to accept the Board's jurisdiction over him and left the room in the middle of the hearing. On April 13, 2006, the Parole Board issued a decision declaring petitioner to be a technical parole violator for changing his residence without permission and for leaving the CCC without a successful discharge. The Parole Board imposed nine months of backtime for these violations. With 125 days added to his sentence during the time of his delinquency, petitioner's new maximum release date became September 27, 2012.

Petitioner sought administrative relief from the Parole Board on May 25, 2006, raising numerous challenges to the revocation proceedings and the Parole Board's decision. The Board denied the requested relief on July 3, 2006. Petitioner then requested re-parole, but was denied on April 24, 2007 for a multitude of reasons, including a negative recommendation by the Department of Corrections, his unacceptable compliance with prescribed institutional programs, his institutional behavior and his need to participate in additional programs. His next parole review is scheduled for April 2008.

On January 12, 2006, following the detainer but prior to his revocation hearing, petitioner initiated the instant action. In his amended § 2254 form filed with this Court, he now sets forth several claims which, liberally construed, make the following allegations: (1) the revocation proceedings were unconstitutional and devoid of due process protections; (2) the Pennsylvania Parole Board did not have jurisdiction over petitioner; (3) the parole revocation constituted a violation of the Double Jeopardy

2

Clause; and (4) petitioner is innocent of the state charges and should not be incarcerated.

II.     FAILURE TO EXHAUST STATE COURT REMEDIES

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). A petitioner is not deemed to have exhausted the remedies available to him if he has a right, under state law, to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989). Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims. O'Sullivan, 526 U.S. at 842-45. A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise, they risk depriving state courts of the "opportunity to correct their own errors, if any." Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).

With respect to parole revocation, Pennsylvania law provides a specific avenue for exhaustion. First, a party may appeal a revocation decision to the Parole Board's Central Office within thirty days of the decision. 37 Pa. Code § 73.1. The administrative appeal may then be followed by an appeal to the Pennsylvania Commonwealth Court, and, if desired, a petition to the Pennsylvania Supreme Court for allowance of appeal. 42 Pa.C.S. § 763(a); Williams v. Wynder Civ. A. No. 05-0892, 2005 WL 1201386, *2 (M.D.Pa. May 19, 2005).

In the case at bar, petitioner's parole was revoked on April 13, 2006. The Board's decision explicitly stated:

> IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE

FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE § 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.

See Response at Exh. R-9. Petitioner subsequently pursued an administrative appeal with the Parole Board, which was denied on July 3, 2006. Notwithstanding the explicit instructions in the original Board decision, however, petitioner never sought relief from the Commonwealth Court. Indeed, he admits as much in his habeas petition and claims that such exhaustion would delay and hinder his attempts to obtain federal relief. See Petition for Writ of Habeas Corpus, p. 11 (back). As such logic does not excuse petitioner's obligation to give the state courts an opportunity to review his claims, this Court has no choice but to find that petitioner has failed to exhaust his state court remedies.

While our normal course of action would be to dismiss without prejudice, it remains well-established that a court may deny a habeas petition on the merits if "it appears unequivocally that the petitioner has not raised a colorable federal claim." Faulkner v. Pennsylvania Department of Corrections, 221 F. Supp.2d 560, 563 (E.D. Pa. 2002) (citing 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 134 F.3d 506, 514-515, 517 (3d Cir. 1997); Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992). As we find no arguable basis for any of petitioner's claims for habeas relief, we excuse the exhaustion requirement and simply deny relief on the merits.

III.    MERITS[2]

    A.    Whether Petitioner's Parole Revocation Proceedings Were Constitutional

Petitioner's first challenge alleges that the revocation proceedings were unconstitutional since they were conducted outside a court of law. Specifically, he claims that he was improperly re-incarcerated for violation of Parole Board conditions. The Court deems this claim to be meritless.

---

[2] This Court normally reviews habeas claims to determine whether the state court's decision on those claims was either contrary to or unreasonable application of federal law, as set forth in the AEDPA, 28 U.S.C. sec. 2254 and Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000). As noted above, however, the state court never had the opportunity to review these claims, making the AEDPA standard inapplicable. We thus consider these claims under a *de novo* standard. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000).

In <u>Morrissey v. Brewer</u>, 408 U.S. 471, 92 S. Ct. 2593 (1972), the United States Supreme Court emphasized the fundamental proposition that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." <u>Morrissey</u>, 408 U.S. at 480.  Nonetheless, it recognized that, as revocation of parole was a "grievous loss" to a parolee, some informal procedural guarantees were due such proceedings. <u>Id.</u> at 482-483.  Defining the required due process, it first noted that a parolee was entitled, upon arrest, to a preliminary hearing before a neutral and independent decisionmaker "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." <u>Id.</u> at 485-486.  The parolee should be given notice of the hearing with a list of the alleged violations, he should be able to speak or bring witnesses or evidence on his behalf and he should have the right to confront witnesses against him, unless the hearing officer finds specific reasons not to allow such confrontation. <u>Id.</u> at 486-487. Thereafter, the hearing officer should make a summary of what occurred at the hearing and prepare an informal explanation of whether, and on what basis, there is probable cause to hold the parolee for the final decision of the parole board. <u>Id.</u> at 487.

Second, the Supreme Court dictated that the parolee must also have a hearing, if desired, before a neutral and detached body, prior to the final decision on revocation of parole. <u>Id.</u> at 487-488.  At this hearing, the parolee, must have an opportunity to be heard and prove that he did not violate his parole conditions or that he otherwise does not deserve a revocation. <u>Id.</u> at 488.  The hearing must occur within a reasonable period of time and it "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." <u>Id.</u>  This second stage is not equivalent to a criminal prosecution, but rather is a "narrow inquiry." <u>Id.</u> at 489.

In light of <u>Morrisey</u>'s dictates, Pennsylvania has implemented regulations to ensure its parole

revocation hearings are constitutionally acceptable.  Pursuant to 37 Pa. Code § 71.2, after a parolee is arrested and detained under a Board warrant, he shall be notified of the charges against him; that he shall have a preliminary hearing before an examiner within 14 days; that he shall have the right to speak, present witnesses and present documentary evidence at that hearing; that he has the right to retain counsel and that the hearing shall be to determine whether probable cause exists to detain him.  Id. 37 Pa. Code § 71.2(1).  The regulations go on to state that after the hearing, the examiner shall make a summary of the evidence and which violations are supported by probable cause.  Id. at § 71.2(7). Thereafter, if probable cause is found, a violation hearing shall be held no later than 120 days after the preliminary hearing, prior to which the parolee shall be notified of the date, the charges against him and his rights at the hearing.  Id. at § 71.2(10 & 11).  If the parolee cannot afford counsel, the Board will notify the appropriate public defender.  Id. at § 71.2(12).  After the hearing, a written decision shall be prepared reflecting the evidence relied upon, which violations were proven by a preponderance of the evidence and the ultimate disposition and basis.  Id. at § 71.2(16).

Petitioner's revocation proceedings were no exception to this format.  He was arrested on December 16, 2005 and was given a notice, on December 22, 2005, of the charges against him, the supporting evidence and the date and time of his preliminary hearing.  See Response at Exh. R-5. Following the preliminary hearing, the hearing examiner found probable cause to detain him and prepared a summary of his findings.  See Response at Exh. R-7 and R-8.  Petitioner then had a revocation hearing on March 10, 2006, during which he was represented by the public defender.  Id. at R-9.  Thereafter, the Parole Board issued a decision with its reasons on April 13, 2006.  Id.

Undoubtedly, these proceedings complied with both the Supreme Court's mandate and Pennsylvania state regulations.  Petitioner now fails to specify what portion of the proceedings were unconstitutional or how any of his federal rights were violated.  Absent such allegations, the Court must

deny this claim.

      B.      <u>Whether the Parole Board Had Jurisdiction Over Petitioner</u>

Petitioner's second contention asserts that the Pennsylvania Parole Board had no jurisdiction to recommit him to prison. Moreover, he claims that there is no authority which can give the Pennsylvania Parole Board jurisdiction over him. Again, the Court finds no merit to this claim.

Under Pennsylvania law, the Parole Board "shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution . . .", so long as the prisoner has been sentenced to a minimum of two years imprisonment. 61 P.S. § 331.17; <u>see</u> <u>also</u> <u>Commonwealth v. Camps</u>, 772 A.2d 70, 74 (Pa. Super. 2001). "If parole is granted, or a term of probation has been imposed, the individual is removed from the jurisdiction of the Department of Corrections and placed under the jurisdiction of the Board. If the individual violates parole or probation, the Board conducts hearings and may revoke probation and parole based upon any violations that transpired." <u>Martin v. Pennsylvania Bd. of Probation and Parole</u>, 840 A.2d 299, 302-303 (Pa. 2003).

While federal courts have examined the constitutionality of the Parole Board's actions on various occasions, no federal court has questioned the actual authority of the Board to revoke parole. Indeed, the Parole Board's jurisdiction to conduct revocation proceedings has been implicitly accepted by the United States Supreme Court. <u>See</u> <u>generally</u> <u>Pennsylvania Board of Probation and Parole v. Scott</u>, 524 U.S. 357, 118 S. Ct. 2014 (1998) (considering a constitutional challenge to parole board's revocation of parole without questioning board's jurisdiction to do so). As petitioner invokes no controlling jurisprudence to the contrary, we decline to grant habeas relief on this claim.

C.     Whether the Revocation of Parole Violated the Double Jeopardy Clause

Petitioner's third claim asserts that the Parole Board's revocation of his parole and reinstitution of his sentence by reincarcerating him violated the Double Jeopardy Clause. The Court declines to find any such constitutional infringement.

The Fifth Amendment of the Constitution states in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amend. V; see also Benton v. Maryland, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969) (applying the Fifth Amendment to the states through the Fourteenth Amendment). It provides three fundamental protections: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction and (3) against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201 (1989).

Notably, the scope of the Double Jeopardy Clause is limited to criminal prosecutions. See Breed v. Jones, 421 U.S. 519, 528, 95 S. Ct. 1779 (1975). As an administrative hearing, a Parole Board hearing is not "essentially criminal." See Garcia v. United States, 769 F.2d 697, 700 (11th Cir.1985) ( "[T]he Double Jeopardy Clause does not apply to parole revocation proceedings." ); Priore v. Nelson, 626 F.2d 211, 217 (2d Cir.1980) ( "The Double Jeopardy Clause applies to judicial proceedings, not parole." ); United States ex rel. Conklin v. Beyer, 678 F. Supp. 1109, 1111 (D.N.J.1988) (declining to apply the Double Jeopardy Clause to parole board proceedings). Thus, "the Fifth Amendment guarantee against double jeopardy that bars multiple prosecutions for the same crime or conduct does not apply to bar parole revocation." Bryant v. Jenkins, Civ. A. NO. 04-4469, 2006 WL 1373182, *3 n. 3 (D.N.J. May 15, 2006) (quoting Standlee v. Rhay, 557 F.2d 1303, 1306 (9th Cir. 1977)); see also Fisher v. Palakovich, Civ. A. No. 06-1776, 2007 WL 140995, *4 (M.D. Pa. 2007) ("the imposition of

confinement when an offender violates his term of probation has never been considered to raise a serious double jeopardy problem.") (quoting Ralston v. Robinson, 454 U.S. 201, 220 n. 14, 102 S. Ct. 233, 245 n. 14 (1981)).

Petitioner's double jeopardy claim challenges only the Parole Board's revocation of his parole and his reincarceration. As the law is clear that the Double Jeopardy Clause does not apply to such proceedings, we must deny this claim.

### D.   Whether Petitioner's Underlying Conviction is Defective

In his final claim, petitioner makes the following assertion:

> Petitioner declares that he is entirely innocent of all state charges and the sentence which has been reinstated and is now in use by the Pennsylvania Board should be declared void because the court that rendered the sentence had no jurisdiction over the subject matter. Moreover, such charge, impost, tax or nature of the offense by way of counts declared in the defective indictment is exclusively regulated by the federal government and is an unconstitutional interference with the power of Congress to regulate the commerce clause.

See Petition for Writ of Habeas Corpus, at back of p. 10.

Applying our most liberal construction to this claim, petitioner appears to be alleging that his underlying conviction is defective and that he was wrongfully incarcerated. He presents, however, neither evidence of his innocence nor any constitutional deficiencies in his trial which would allow this Court to declare his sentence void. Absent at least some basis for this allegation, the Court has no choice but to deny habeas relief.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this *10th* day of *July*, 2007, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED. There is no probable cause to issue a certificate of appealability.

       /s/ *Charles B. Smith*
       CHARLES B. SMITH
       CHIEF UNITED STATES MAGISTRATE JUDGE